UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MALINDA KRIEBEL,

        Plaintiff,

                            Case No.: 05-CV-70150-DT

vs.

                            HON. NANCY G. EDMUNDS
                            MAG. JUDGE WALLACE CAPEL, JR.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant,
_____/

## REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is recommended that the Court deny Plaintiff's Motion for Summary Judgment, grant Defendant's Motion for Summary Judgment, and enter judgment for Defendant.

**II.    REPORT**

This is an action for judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for disability insurance benefits [DIB]. Plaintiff signed her applications for DIB on September 18, 2002, alleging that she has been disabled and unable to work since July 1, 2002, due to "post partum [perri]: Cardiomyopathy." (TR 45-48, 57-65). Benefits were denied initially on December 17, 2002. (TR 26-30). A de novo hearing was held on August 10, 2004, before Administrative Law Judge [ALJ] Larry Temin. (TR 172-197). In a decision dated August 25, 2004, the ALJ found that Plaintiff could perform a limited range of sedentary work. (TR 13-21). Accordingly, Plaintiff was found not disabled. The ALJ's decision became the Commissioner's

final decision when the Appeals Council denied review on November 17, 2004.  (TR 4-6).  The Plaintiff has commenced this action for judicial review.

      A.      **PLAINTIFF'S TESTIMONY**

Plaintiff testified that she was born August 17, 1966, and was thirty-seven at the time of the hearing.  (TR 177).  She stated that she is five foot, nine inches tall, and normally weighs about one hundred and eighty pounds.  Id.  She is currently pregnant because as she explained, she was on medications that counteracted the effectiveness of her birth control pills.  Id.  She stated that she is right-handed, and married with two children.  Id.  She stated that her children are currently ten and two.  (TR 177-78).  She has been married for fifteen years and lives in a house.  (TR 178).

Plaintiff reported that she graduated from high school and spent a couple years at Lansing Community College, but moved out of the area and never obtained a degree.  Id.  She stated that she can read, write, and do simple arithmetic.  Id.  She reported that she has never been in the military.  Id.

She stated that she is not currently employed and the only source of household income is from her husband's employment at Tellis Tool.  Id.  She stated that her onset date for disability was July 1, 2002, and she has not applied for unemployment or worker's compensation since that date.  (TR 179).  She stated that she currently has health insurance.  Id.  She stated that her last day of work was June 27, 2002, for Dr. Ronald LeClair in Calla City.  (TR 179).  She explained that she stopped working there when she had her daughter on June 28, 2002, and on July 1, 2002, she was in the hospital for congestive heart failure.  (TR 180, 183).  Dr. LeClair left the position open for her until January 2003, but then had to hire a replacement.  (TR 180).

Plaintiff testified that she worked for Dr. LeClair for about two and half years, at first full-time, and after about a year and a half, after September 11, 2001, part-time at approximately seventeen hours a week. (TR 179). She stated that when she was full-time she received a salary of $315.00 a week and did the billing, appointments, transactions, insurance collection, and other front desk responsibilities. (TR 180). She reported that she walked about two hours, stood about two and a half hours, and sat about two and a half hours of the workday. Id. She stated that she lifted less than ten pounds. (TR 180-81).

Prior to that, Plaintiff reported working for Independent Bank for two years, working full-time for about six months, and then went to part-time. (TR 181). She stated that she was a teller and was paid $8.00 dollars an hour. Id. She testified that she was on her feet most of the day and lifted under ten pounds. Id.

In 1994 and 1995, she worked at Northern Lights Restaurant part-time after her first daughter was born for about fifteen to eighteen months. (TR 181). She reported that she made approximately $2.50 an hour, plus tips and worked about twenty hours a week. (TR 181). She stated that she was on her feet most of the day and lifted up to twenty pounds and sometimes more with "big trays." (TR 182).

From 1987 to 1994, she worked full-time as an assembler for Starboard Industries for $7.50 an hour. Id. She reported that she assembled precision machine parts and "occasionally assisted as a stock handler." Id. She testified that she was also on her feet most of the time in this employment as well, and estimated that she lifted up to twenty pounds. Id. She stated that she lifted more when she moved "skids." Id. In 1987, she bartended part-time after work for extra money. Id.

Plaintiff testified that she cannot work because she gets "fatigued very easily, very quickly," and has shortness of breath when she tries to talk or address the public. (TR 183, 190). She explained that this has been a problem since she last gave birth and she explained that she has "so much energy each day to use, and [she] ha[s] to decide how and when [she] want[s] to use it." (TR 183). She stated that she has been getting better since she gave birth, but she still fatigues easily. Id. She explained that when the cardiomyopathy first started, she would fatigue after two or three hours, but now she fatigues after four or five hours. (TR 183-84). She explained that "[i]t depends on the strenuous - - the activity that [she is] doing." (TR 184). She testified that she does not have any mental or emotional difficulties. Id.

Plaintiff explained that the shortness of breath is essentially what keeps her from working. (TR 189). She explained that when she talks she gets short of breath and coughs. Id. She thought that her medications were causing her to cough, but she was not sure; and she testified that the doctors have not told her the cause. Id. Plaintiff indicated that she was short of breath at the hearing and when she talks on the telephone. Id.

Plaintiff testified that she is currently on Toprol and prenatal vitamins, but they have taken her off the other medications due to the pregnancy. (TR 184). She explained that she was taking ten milligrams of Zestril once a day, forty milligrams of Lasix once a day, and Cyclosol, her birth control, prior to the pregnancy. Id. She stated that the Zestril was an ACE inhibitor, but when she could no longer take it, she was put on Lisinopril. (TR 185).

Plaintiff testified that she can lift, but she cannot carry because of shortness of breath. Id. She stated that she could not "think of any situations of pushing or pulling," then later stated that she "cannot vacuum for more than a couple minutes a time," and has her daughter or husband do

4

same. (TR 185, 86). She reported that she can stand about thirty-five minutes before she has to sit down due to the fatigue. (TR 185). She stated that she also gets fatigued if she walks too far; for example, after walking to her mailbox at the end of the driveway, she has to sit for a couple of minutes. (TR 186). She stated that she does not have difficulty sitting, bending over, or reaching with her arms. Id. She stated that she does get short of breath if she climbs stairs. Id. She stated that she does not smoke. Id.

Plaintiff described a typical day. (TR 187-88). She stated that she gets up and has breakfast with her family, "usually cereal or eggs." (TR 187). She stated that her oldest daughter helps clean up the table and they "put everything in the sink." Id. She stated that she then sits and makes her plans for the day before she goes outside to watch the children play on the swing set. Id. She stated that she cares for her children independently, but her husband's mother only lives fifteen minutes away. Id. She explained that if she needs help, she calls her immediately; and her "mother also comes to stay periodically through the summertime." Id.

She stated that she drives, but her husband drove her to the hearing. (TR 187, 189-90). She indicated that there was no reason that she did not drive herself. (TR 190). She testified that she does not have any hobbies or recreational activities, other than church. (TR 187). She stated that she and her husband occasionally volunteer at the nursery. Id. She stated that she rocks the infants and "he chases the toddlers." Id. She reported that she can take care of her own personal grooming and she is able to shop twice a week in increments. (TR 187-88). She explained that she "break[s] it up into sections," to get what she can and then go back "a couple days later." (TR 188). She stated that she can carry grocery bags, but has her husband carry the heavy things or she waits until someone else can do it. Id.

Plaintiff reported that she prepares most of the meals, does the dishes, and does a load of laundry daily. Id. She states that she cannot vacuum, take out the garbage, or do any yard work. Id. She stated that her oldest daughter does the dusting and picking up around the house. Id.

Plaintiff indicated that she sees disability benefits as a short-term solution and hopes to be gainfully employed again one day. (TR 190-91). In fact, she stated that she thinks she would be able to work again in twelve to eighteen months because her condition improves daily. (TR 190).

### B.     MEDICAL EVIDENCE

Examinations of the parties' cross-motions for summary judgment reveal that an additional recitation of the Plaintiff's medical evidence would be repetitive. The pertinent record medical evidence relied upon by this Court is fully articulated in the Analysis.[1]

### C.     VOCATIONAL EXPERT'S TESTIMONY

Stephanee Leech, a vocational expert [VE], testified at the hearing. (TR 191-95). The VE classified Plaintiff's past relevant work as follows: front desk and billing at Dr. LeClair's office, light and semi-skilled; bank teller, light and skilled; assembler, light and unskilled; and waitress, light and semiskilled. (TR 192). The VE testified that the first job is indicated by the Dictionary of Occupational Titles [DOT] to be done in the sedentary capacity, which is different from the way Plaintiff performed the position. (TR 193).

The VE also testified that Plaintiff had acquired skills from her previous employment. Id. The VE indicated that she had transferable skills from the doctors office including, "computer skills, some computation skills, billing skills, and some money handling skills." Id. The VE testified that

---

[1]See Subpart E, supra.

she had transferable skills from the bank teller positions, including, "skills such as record keeping skills, money handling skills, some computer skills, and some customer service skills." Id.

The ALJ presented a hypothetical question to the VE in which a claimant with Plaintiff's age, education, and work experience possessed the residual functional capacity [RFC] to

> lift, carry, push and pull up to 10 pounds occasionally and five frequently. The individual can in combination stand and or walk two hours in an eight hour work day, but no more than 15 minutes at a time without a - - without being able to sit for two to three minute [sic]. The individual can occasionally stoop, kneel, crouch, and climb ramps and stairs. Cannot crawl or climb ladders, ropes or scaffolds. The individual cannot perform work requiring the forceful use of the lower extremities. Cannot work at unprotected heights or around hazardous machinery. Cannot work with concentrated exposure to extreme cold, extreme heat or high humidity or fumes, and noxious odors, dusts or gases. . . . should not require more than occasional speaking.

(TR 193-94). The VE testified that Plaintiff would not be capable of her past work with such restrictions. (TR 194).

The ALJ then asked whether there was any work available with the Plaintiff's transferable skills. Id. The VE testified to the following positions that would utilize her computer skills from the doctor's office and the bank teller position: posting clerk, 9,402 positions, and general office clerk, reduced range of 12,000 positions. (TR 194-95). The VE testified that within the region the following positions existed: file clerk, 1,500 positions, and record clerk, 398 positions. (TR 195).

The ALJ then asked whether the added restriction of needing "to miss three day [sic] of work per month for medical reasons" would change the ability to do the listed jobs. Id. The VE stated that there were no jobs with the additional limitations. (TR 195). Plaintiff's counsel did not question the VE. (TR 195-96).

7

**D.     ALJ'S CONCLUSIONS**

After reviewing the testimony presented at the hearing and the medical evidence in the record, the ALJ found that "[t]he record [] reflects that the claimant has a history of congestive heart failure and left ventricular dysfunction due to post-partum cardiomyopathy." (TR 16). The ALJ found that although these impairments collectively are "severe," she does not have an impairment either alone or in combination, sufficiently severe to meet or medically equal the criteria of any condition in the Medical Listings in Appendix 1, Subpart P, Regulations No. 4. (TR 16, 20). The ALJ found Plaintiff's allegations regarding her limitations to be credible to the extent that they are compatible with the RFC assessed. (TR 20). He determined that Plaintiff had the RFC to perform a significant limited range of sedentary work. (TR 18, 20). Therefore, the ALJ concluded that Plaintiff is not eligible for DIB. (TR 20-21).

**E.     ANALYSIS**

Plaintiff's Motion for Summary Judgment argues that the ALJ's decision is not supported by substantial record evidence because the ALJ failed to accord deference to the treating physician's opinion and the burden is on the Commissioner to show disability.[2] In response, Defendant's Motion for Summary Judgment contends that the ALJ's decision is supported by substantial evidence.[3] The matter is now ready for decision.

---

[2] Plaintiff's Motion for Summary Judgment and Brief filed May 26, 2005 (hereinafter "Plaintiff's Brief"), at pages 10-12; Plaintiff's Response to Defendant's Motion for Summary Judgment filed September 27, 2005 (hereinafter "Plaintiff's Response").

[3] Defendant's Motion for Summary Judgment and Brief filed September 13, 2005 (hereinafter "Defendant's Brief"), at pages 4-8.

### 1. Standard of Review

The findings of the ALJ regarding Plaintiff's disabled status are conclusive if supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g) (1997). Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a scintilla of evidence, but less than a preponderance of evidence. Brainard v. Sec'y of Health and Human Servs., 889 F.2d 679, 681 (6th Cir. 1989).

This standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed. Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994). Even if the court might arrive at a different conclusion, an administrative decision must be affirmed if it is supported by substantial evidence. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). Finally, consideration of the whole record does not mean that the ALJ must mention or comment on each piece of evidence submitted. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); see also Thacker v. Comm'r of Soc. Sec., 99 Fed.Appx. 661, 665 (6th Cir. 2004) (unpublished). Applying these standards, I will analyze each of Plaintiff's claims.

#### a. Burden of Proof

Defendant argues that "Plaintiff did not establish that she was entitled to disability insurance benefits," and the ultimate burden lies with her according to Tyra v. Sec'y of Health and Human Servs., 896 F.2d 1024, 1028 (6th Cir. 1990).[4] However, Plaintiff points out that she "was found not to be disabled at the fifth step in the sequential evaluation;" therefore, the burden is on the

---

[4]Defendant's Brief at page 7.

Commissioner. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999).[5] Plaintiff is correct.

The five steps are described in the regulations. 20 C.F. R. § 404.1520.

> At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 CFR § 404.1520(v).

> As an initial matter, we note that the burden of proof lies with the claimant at steps one through four of the process, culminating with a claimant's proof that she cannot perform her past relevant work. The burden of proof shifts to the Commissioner only if [sic] the fifth step, proving that there is work available in the economy that the claimant can perform, is reached. See Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); Walters v. Comm'r. of Soc. Sec., 127 F.3d 525 (6th Cir.1997). The rationale behind this rule is simple. It is thought to be unfair to require a lay claimant to prove that there are no jobs available in the economy which he can perform because such a determination requires a level of expertise in vocational matters. On the other hand, it is not unfair to require a claimant to prove the extent of his impairments. See Bowen v. Yuckert, 482 U.S. at 146 n. 5, 107 S.Ct. 2287 ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.") . . . The step five analysis is meant to determine, given the severity of the impairments already proven, whether there are jobs in the economy which a claimant can perform.

Id. Nonetheless, the shifting of the burden is not key to the analysis necessary here. Plaintiff challenges the ALJ's evaluation of the treating physician, not the evaluation of the vocational expert's testimony at Step Five.

### b. Treating Physician

Plaintiff argues that the ALJ did not properly analyze the weight given to her treating physician, Dr. VanderVeen's, opinion.[6] This Court is well aware that the medical opinions and

---

[5]Plaintiff's Response at page 4.

[6]Plaintiff's Brief at pages 10-12. Plaintiff's Response at pages 4-5.

diagnoses of treating physicians are entitled to substantial deference, particularly if those opinions are uncontradicted.  King v. Heckler, 742 F.2d 968, 974 (6th Cir. 1984).

> The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records.

Bankston v. Comm'r of Soc. Sec., 127 F.Supp.2d 820, 824 (E.D. Mich. 2000).  However, such deference is due only if the treating physician's opinion is based on sufficient medical data.  See 20 C.F.R. § 404.1529.  It is often misunderstood that the determination of disability is the prerogative of the Secretary, and not the treating physician.  Kirk v. Sec'y Of Health & Human Servs., 667 F.2d 524, 538 (6th Cir. 1981); Duncan v. Sec'y of Health and Human Servs., 801 F.2d 847, 855 (6th Cir.1986); 20 C.F.R. § 404.1527.

An ALJ may reject a physician's opinion when it is brief, conclusory, or not supported by medically acceptable clinical or laboratory diagnosis techniques.  20 C.F.R. § 404.1527(d)(2).  Accordingly, treating physicians' opinions must be grounded on objective medical evidence, and no deference need be afforded those opinions if they are simply conclusory.  Houston v. Sec'y of Health and Human Servs., 736 F.2d 365, 367 (6th Cir. 1984); Duncan, 801 F.2d at 855 (citing King, 742 F.2d at 973).  In other words, the weight to be given a doctor's opinion by an ALJ will depend on the extent to which it is supported by "specific and complete clinical findings."  Giddings v. Richardson, 480 F.2d 652, 656 (6th Cir. 1973).  See also  Cutlip v. Sec'y of Health and Human Servs., 25 F.3d 284, 287 (6th Cir. 1994) (citing Young v. Sec'y of Health & Human Servs., 925 F.2d 146, 151 (6th Cir.1990)).

In <u>Wilson v. Commr. of Soc. Sec.</u>, 378 F.3d 541, 544, (6th Cir. 2004), the Sixth Circuit found that

> [i]f the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion.

<u>Id.</u> (citations omitted). However, the Regulations clearly state that, "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 404.1527(e)(1). Nonetheless, although an ALJ is not required to discuss each and every piece of evidence, he or she "may not pick and choose the portions of a single report, relying on some and ignoring others, without offering some rationale for his decision." <u>Young v. Comm'r of Soc. Sec.</u>, 351 F.Supp.2d 644, 649 (E.D. Mich. 2004).

Here, the ALJ discussed Dr. VanderVeen's findings. (TR 15-17). The ALJ acknowledged that Dr. VanderVeen "told his patient that she should apply for disability because he did not expect her to return to work soon." (TR 15). Further, the ALJ noted that the doctor stated "that he did not believe she would be able to return to work within the next six months." (TR 16). Lastly, the ALJ acknowledged that in a January 2003 letter from Dr. VanderVeen, he reported that Plaintiff's "symptoms had improved but that she remained severely symptomatic with dyspnea and fatigue. He said she did not expect her to be able to return to full-time work within the next six months which meant that she would be disabled for a period of 12 months (Exhibit 7F)." (TR 16, 146, 156). However, such a statement of disability by a treating physician is not conclusive. 20 C.F.R. § 404.1527(e)(1).

The ALJ also stated that treatment notes from the same date indicated that Dr. VanderVeen diagnosed peripartum cardiomyopathy as well as persistent congestive heart failure with a New York Heart Association [NYHA] Class III classification. (TR 16, 154, 159). However, the ALJ noted that two months later, Dr. VanderVeen's notes indicated an improved NYHA Class II classification.[7] (TR 16, 154). Further, the ALJ found that a "[r]epeat echocardiogram, done March 25, 2003, showed improved ejection fraction of 45%. The claimant's left ventricle was of normal size and her left ventricular dysfunction only mild (Exhibit 7F)." (TR 16, 155). In March 2003, her ejection fraction improved to 45% and in January 2004, her ejection fraction was at 60%. Although Plaintiff argues that a normal ejection fraction pursuant to "Web MD" is more than 55%, and it did not reach such levels until January 2004, almost 19 months after her onset date,[8] this alone does not contradict the ALJ's findings as a whole. There is no rule that Plaintiff points to for the proposition that a less than normal ejection fraction equals disability.

In Wilson, the Sixth Circuit went on to state

[t]hat is not to say that a violation of the procedural requirement of § 1527(d)(2) could never constitute harmless error. We do not decide the question of whether a de minimis violation may qualify as harmless error. For instance, if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it, a failure to observe § 1527(d)(2) may not warrant reversal. NLRB v. Wyman-Gordon, Co., 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969) (plurality opinion) (where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game"). There is also the possibility that if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant. Or perhaps

---

[7]Plaintiff acknowledges this improvement regarding the NYHA classification. Plaintiff's Brief at pages 6-7.

[8]Plaintiff's Brief at page 7.

13

> a situation could arise where the Commissioner has met the goal of § 1527(d)(2)--the provision of the procedural safeguard of reasons--even though she has not complied with the terms of the regulation.

Wilson, 378 F.3d at 547.  In the present case, the ALJ essentially agreed with the findings of the treating physician, limiting her to a limited range of sedentary work; however, he failed to accept the opinion that she would continue to be disabled for twelve months.[9]  (TR 16).  Thus, because the ALJ essentially adopted the opinion, it is "irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant."  Wilson, 378 F.3d at 547.  Further, Dr. VanderVeen stated on March 14, 2003, that

> [i]f she has a good night's sleep, she can keep up with her 8 mo old daughter and do household activities until about 4:00 pm.  By then, she is completely fatigued.  Her daughter takes a nap and typically mom does too.  She is able to do 50% of what she could do 2 years ago.  She is gradually improving since the acute onset of her heart failure last summer.  She still requires frequent rest during the [d]ay especially if her daughter keeps her up at night.

(TR 154).  Additionally, the ALJ stated that "State Agency medical consultants determined that the claimant's heart impairment would not be severe for 12 or more consecutive months and was not, therefore disabling (Exhibit 1B)."  (TR 16).  The ALJ concluded that

> [w]hile the evidence shows that the claimant did have a severe heart impairment following the birth of her last child, it does not show that she experienced work-preclusive limitations for 12 or more consecutive months.  By her own admission, the claimant's heart condition has improved and this is borne out by records from her treating physician showing that, by March 2003, he rated her with New York Heart Association Class II limitations which indicates "[m]ild symptoms and slight limitation during ordinary activity.  Comfortable at rest."  (New York Heart Association Functional Classification).[10]  These limitations are certainly compatible

---

[9]Dr. VanderVeen's opinion regarding the length of Plaintiff's disability is contradicted by his treatment notes of continuing improvement; thus, substantial evidence supports the ALJ's decision to disregard same.  (TR 146, 154-56, 159).  Defendant's Brief at pages 5-6.

[10]See http://www.americanheart.org/presenter.jhtml?identifier=330.

14

> with the ability to perform sedentary work. There is no evidence from other evaluating physicians or acceptable medical source[s] to contradict the assessment of the claimant's treating physician regarding his patient's NYHA classification.

(TR 17). These conclusions are completely at odds with Plaintiff's assertion that the ALJ "completely disregarded" Dr. VanderVeen's opinion.[11] Further, the improved NYHA classification came after the treating physician's indication that her condition was expected to last for a consecutive twelve months or more. Thus, because Dr. VanderVeen's opinion regarding disability is inconclusive under 20 C.F.R. § 404.1527(e)(1), because the ALJ essentially agreed with his findings, and because his diagnosis of her NYHA classification improved over only two months, there is no error.

Lastly, Plaintiff alleges that her current pregnancy proves "all the more" that she is disabled.[12] The ALJ acknowledged that Dr. Fattal "advise[d] the patient that, with her latest pregnancy, she did run the risk of recurrent cardiomyopathy and recommended a repeat echo closer to her due date and then about three months after delivery (Exhibit 8F/1-2)." (TR 16). However, this is simply speculation and the record does not reflect actual recurrent cardiomyopathy within the twelve months time frame in which the disability here must be shown to continue.[13]

---

[11] Plaintiff's Brief at page 10.

[12] Plaintiff's Response at page 4.

[13] It is also noted by the undersigned that Plaintiff requested remand on the first page of her Motion "so that the ALJ might consider additional information from claimant's treating physician," but the substance of her Brief does not develop an argument for same, nor does it point to specific "additional evidence." However, "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir. 1997) (citations omitted). Therefore, no discussion of same will follow.

### III.     CONCLUSION

For the reasons stated, I find that the ALJ's decision denying Plaintiff benefits is substantially supported in the record. Accordingly, I respectfully recommend that the Court **DENY** Plaintiff's Motion for Summary Judgment, **GRANT** Defendant's Motion for Summary Judgment, and enter judgment for Defendant Commissioner.

Pursuant to Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1), the parties are hereby notified that within ten days after being served with a copy of the recommendation they may serve and file specific, written objection within ten days after being served with a copy thereof. The parties are further informed that failure to timely file objections may constitute a waiver of any further right of appeal to the United States Court of Appeals. United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

In accordance with the provisions of Fed.R.Civ.P. 6(b), the court in its discretion, may enlarge the period of time in which to file objections to this report.

                                                        S/ Wallace Capel, Jr.
                                                        **WALLACE CAPEL, JR.**
                                                        **UNITED STATES MAGISTRATE JUDGE**

**Dated:**   January 5, 2006

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2005, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: James A Brunson, Assistant United States Attorney, 101 First Street, Suite 200, Flint, Michigan 48708.

and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s):   Robert H. Fortunate, 155 W. Congress, Suite 350, Detroit, Michigan 48226, and the Social Security Administration, Office of the Regional Counsel, 200 W. Adams Street, 30th Floor, Chicago, Illinois 60606.

          s/James P. Peltier
          United States District Court
          Flint, Michigan 48502
          810-341-7850
          E-mail: pete_peltier@mied.uscourts.gov